UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Adam Veinotte ) | |
| 2 Blossom Lane ) | |
| Stratham, NH 03833 ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | Dkt. No. |
| ) | |
| Milford DCH, Inc. ) | |
| d/b/a DCH Toyota of Milford ) | |
| 159 N. Bartlett Street ) | |
| Medford, OR 97501 ) | |

## COMPLAINT AND JURY DEMAND

### PARTIES

1. Adam Veinotte ("Mr. Veinotte") is an individual that resides at 2 Blossom Lane, Stratham, New Hampshire.

2. Defendant Milford DCH, Inc. ("DCH") is a Massachusetts corporation with a principal office at 159 N. Bartlett Street, Medford, Oregon.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the matter involves claims arising pursuant to and questions of federal law.

4. This action is commenced in the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1332, as the parties are citizens of diverse jurisdictions and the amount in controversy, exclusive of interests and costs, is in excess of Seventy-Five Thousand dollars.

### FACTS RELEVANT TO ALL COUNTS

5. Mr. Veinotte has worked in the car industry in a high-level sales management position for almost twenty (20) years.

6. On or about June 24, 2016 DCH hired him as its General Sales Manager.

7. Throughout his employment Mr. Veinotte received good performance reviews.

8. He received regular wage increases.

9. He received bonuses.

10. By comparison to other employees where he worked, he was a high wage earner with full-year income approaching two-hundred thousand dollars ($200,000).

11. He was not subjected to any discipline pursuant to the Company's disciplinary policies.

12. On June 1, 2018 the defendant provided Mr. Veinotte a performance-based pay increase.

13. The company also added additional bonus levels to his compensation plan.

14. Unfortunately, Mr. Veinotte's wife had medical problems including a history of mental health treatment and an opioid addiction for which she received treatment.

15. On or about June 14, 2018 he communicated with the General Manager, who knew of his wife's mental health problems and opioid addiction, that he needed to take leave because of his wife's medical problems and his need to care for his children.

16. Mr. Veinotte specifically advised the GM that he required accommodation regarding his job duties and responsibilities while addressing these issues.

17. At the time of this communication, Mr. Veinotte had approximately three (3) weeks of accrued Paid Time Off (PTO).

18. He utilized this PTO time.

19. While out on PTO, he continued to perform work related tasks by communicating with the GM.

20. He continued to advise of his need for workplace accommodation.

21. The work he performed while out on Paid-Time-Off included work-related tasks such as completing month-end bonuses for team members.

22. The defendant, though aware of this work, did not pay Mr. Veinotte for it.

23. While Mr. Veinotte was out on paid leave, the GM terminated sales events that Mr. Veinotte had put in place and that the prior year, 2017, had accounted for 143.5% of achieving the sales objectives.

24. While Mr. Veinotte was out on paid leave, the GM took a vacation.

25. As Mr. Veinotte's PTO began to dwindle, the GM became non-responsive.

26. On or about July 2, 2018 Mr. Veinotte notified the company's Leave Administrator that he required FMLA leave due to his wife's health problems and his need to care for his children.

27. On July 3, 2018, he notified the Leave Administrator a second time of his need for FMLA leave.

28. Two (2) days later, on July 5, 2018, Mr. Veinotte learned through the company's payroll system that he was no longer an employee.

29. Normally the system identified the amount of his direct deposit.

30. This time, though, it indicated "0"

31. He clicked on the paystub hyperlink.

32. It showed that a paper/manual check was cut.

33. No direct deposit was being processed.

34. The information then on the system indicated that the company cut the paper check one or two days after Mr. Veinotte communicated his need for FMLA leave.

35. Early in the morning of July 6, 2018 the GM informed Mr. Veinotte that the company had terminated his employment.

36. The GM had already communicated the termination of Mr. Veinotte to other employees.

37. The termination notice, like the final check, also was dated July 5, 2018 – two days after Mr. Veinotte requested FMLA leave for a second time.

38. The company claimed that the termination was based on performance. This is false.

39. This was a pre-text for the reason: discrimination against Mr. Veinotte who required leave due to his wife's qualified disability (federal and state), retaliation against him (federal and state), and wrongful termination.

**COUNT I**
**(Violation of Americans with Disabilities Act and M.G.L. c. 151B )**

40. The plaintiff incorporates by reference all allegations within this Complaint.

41. Mr. Veinotte's wife suffered from a qualified disability as defined by the ADA and M.G.L. c. 151B specifically mental health disability and an opioid addiction for which she was in treatment.

42. Defendant terminated Mr. Veinotte because of his wife's disability.

43. As a direct and proximate result of the foregoing, Mr. Veinotte suffered damages.

44. Mr. Veinotte demands judgment against defendant including, but not limited, back pay, front pay, compensatory damages, enhanced compensatory damages, punitive

damages, and attorney's fees, any and all other damages to which he is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT II
### (Disability Harassment - Hostile Work Environment)

45. The plaintiff incorporates by reference all allegations within this Complaint.

46. Mr. Veinotte's wife suffered from a qualified disability as defined by the ADA and M.G.L. c. 151B.

47. Defendant threatened, intimidated and acted hostile toward Mr. Veinotte because of his wife's disability, including denying his request for accommodation.

48. Defendant created an oppressive, hostile, intimidating and/or offensive work environment and interfered with Mr. Veinotte's emotional well-being and ability to perform his duties.

49. The harassment was sufficiently severe and pervasive as to materially alter Mr. Veinotte's conditions of employment, and to create a hostile and abusive working environment.

50. The defendant failed to exercise reasonable care to prevent and correct promptly the behavior to which Mr. Veinotte was subjected. It failed to follow and/or reasonably implement harassment and discrimination policies and failed to take effective remedial steps when it knew or should have known of conduct, comments, and activity that violated its own discrimination and harassment policies.

## COUNT III
### (Disability - Retaliation)

51. The plaintiff incorporates by reference all allegations within this Complaint.

52. Mr. Veinotte engaged in protected activity under the ADA and M.G.L. c. 151B by requesting reasonable accommodation because of his wife's disability.

53. Defendant took adverse employment action against Mr. Veinotte by making his work environment intolerable, including denying his request for accommodation, and terminating his employment.

54. Defendant's adverse employment action against Mr. Veinotte was causally related to his engaging in protected activity under the ADA and M.G.L. c. 151B.

55. Mr. Veinotte demands judgment against defendant including, but not limited, backpay, frontpay, compensatory damages, enhanced compensatory damages, and attorney's fees, together with interest and costs and such other and further relief as this Court deems proper.

## COUNT IV
### (FMLA - Retaliation)

56. Plaintiff incorporates by reference all allegations within this Complaint.

57. Mr. Veinotte engaged in statutorily protected activity by using his accrued paid time off and twice requesting FMLA leave.

58. Mr. Veinotte suffered an adverse employment action when defendant terminated his employment because of his request for FMLA leave and/or his need to care for his wife.

59. The adverse employment action was causally related to Mr. Veinotte's protected activity.

60. Mr. Veinotte demands judgment against defendant including, but not limited, back pay, front pay, compensatory damages, enhanced compensatory damages, punitive damages, and attorney's fees, any and all other damages to which he is entitled including all interest all of which is within the jurisdictional limit of this Court.

## COUNT V
### (Wrongful Termination)

61. The plaintiff incorporates by reference all allegations within this Complaint.

62. Defendant terminated plaintiff's employment in bad faith and because of his wife's disability and his request for leave.

63. Defendant's termination of plaintiff's employment was motivated by bad faith, malice, or retaliation.

64. Defendant discharged the plaintiff because he performed an act that public policy would encourage or refused to do something that public policy would condemn when, <u>inter alia</u>, he availed himself of the benefits afforded to him as an employee and requested—twice—leave under the FMLA.

65. Plaintiff demands judgment against defendant including, but not limited, back pay, front pay, compensatory damages, enhanced compensatory damages, punitive damages, and attorney's fees, together with interest and costs and such other and further relief as this Court deems proper.

**JURY DEMAND**

66. Plaintiff demands a jury trial on all claims so triable.

Respectfully submitted,

ADAM VEINOTTE

By his Attorneys,

SHERMAN LAW, PLLC

Dated: 7/17/2020

<u>/s/ John P. Sherman</u>
John P. Sherman, Bar No. 12536
Sherman Law, PLLC
111 Bow Street, Unit 2
Portsmouth, NH 03801
(603) 570-4837
jsherman@johnshermanlaw.com